## BUJAC, ADMINISTRATOR OF COPPINGER v. PHILLIPS.

### March 18, 1837.

*Rule to show cause why the scire facias ad disprobandum debitum should not be quashed.*

Under the act of 1705, the year and a day within which a *scire facias ad disprobandum debitum* in foreign attachment may issue, begins to run from the time of execution sued out against the garnishee, and not from the time of the judgment on the *scire facias* against him.

Where the plaintiff in the *scire facias ad disprobandum* is the executor or administrator of the plaintiff in the original attachment, he is not bound to enter security before the issuing of the writ.

THE facts of this case were as follows. A writ of *foreign attachment* was issued by William Phillips against Coppinger to June term, 1830, which was executed by attaching a debt due by Joseph Sims to Coppinger, and summoning Mr. Sims as garnishee. At the third term of the court, judgment by default, in the usual manner, was granted, and damages, amounting to 2785 dollars, were afterwards duly assessed. A *scire facias* to the garnishee to June term, 1832, followed, upon which, on September 15, 1835, judgment was obtained for 901 dollars 70 cents. Execution on this judgment has never been issued, but on the 6th of October, 1835, the plaintiff gave bond with approved security to restore, &c. if the defendant in the attachment should disprove the debt within a year and a day following, agreeably to the tenor of the act of assembly.

December 21, 1835, a writ of error was sued out by the garnishee, and on the 22d January, 1836, the judgment was affirmed. February 5, 1836, the amount of the judgment against the garnishee was voluntarily paid by him, and on the same day the plaintiff entered satisfaction on this judgment. November 3, 1836, Coppinger having died, as it was alleged, (but at what time doth not appear,) *Patrick Henry Bujac* obtained letters of administration on his estate, and December 20, 1836, he issued a *scire facias ad disprobandum debitum* attached in the hands of Mr. Sims, as due to the intestate Coppinger. Mr. Phillips, the

[Bujac v. Phillips.]

defendant, shortly afterwards obtained the present rule, *to show cause why this writ should not be quashed.*

*G. M. Wharton,* for the rule, contended, 1. That the writ had issued more than a year and a day after the awarding of the execution in the *scire facias* against the garnishee; the awarding of the execution being the rendition of the judgment on that *scire facias.* 2. That the plaintiff, in this writ, had not entered security before it was issued. He cited act of 1705, section 4; Luckner *v.* Huntley, *Cro. Eliz.* 713; Myers *v.* Urich, 1 *Binney,* 25; Fitch *v.* Ross, 4 *S. & R.* 557; *Serg. on Att.* 35, 37; McClenachan *v.* McCarty, 1 *Dall.* 338.

*McCall,* contra, said, 1. That the writ was in time; the year and a day begins to run from the time of execution sued. 2. That, as a general rule, administrators acting in their representative capacity, are exempted from giving bail. He cited the act of 1705; *Sergt. on Att.* 26, 32; *Priv. Lond.*

The opinion of the court was delivered by

STROUD, J.—The first objection to the *scire facias ad disprobandum* is, that it was issued too late. The 4th section of the act of assembly of 1705, which furnishes the rule on this subject, is, " that after judgment obtained by the plaintiff upon any attachment against *non-residents,* the plaintiff shall before sale and *after* execution is awarded, find security who shall undertake for the plaintiff, that if the defendant in the attachment shall, *within a year and a day* next following, by himself or attorney, come into court and disprove or avoid the debt recovered by the plaintiff against him, &c. that then the plaintiff shall restore to the defendant the goods or effects, or value thereof," &c.

The counsel of Mr. Phillips contends that the date of the judgment against the garnishee is the time from which the year and a day is to be computed. He argues, that this judgment, being founded on the *scire facias* to the garnishee, which in terms calls upon him *to show why the plaintiff should not have* EXECUTION *of the goods of the defendant attached in his hands,* is, in legal effect, the *award of an execution,* and as such satisfies the requisition of the act of assembly. The ingenuity of this argument is conceded, but we find no adjudged case to countenance it, and considering the nature of foreign attachment—a

[Bujac v. Phillips.]

proceeding against an *absent* party without the benefit of actual notice of its commencement—were the law now, for the first time, to receive judicial construction, we would not be disposed to adopt this view.   The *custom of London*, without doubt, is the source from which our act took its rise, and supplies in practice the forms of proceeding whereon the act is silent.   In Leuknor *v.* Huntley, *Cro. Eliz.* 712, it is stated by counsel, and not denied by the court, that " the time *disrationare debitum*, is a year after the *execution sued*, and not forthwith *after* the *judgment*."   This statement being of a matter of fact necessarily familiar to the court, comes with nearly the same authority as an express adjudication, in ordinary cases, upon a point of common law.   Assuming, then, that such is the custom of London, and that our law is manifestly derived from this source, it is plain, that a *literal* adherence to the act of assembly is the true construction as to the point in question: that by execution awarded is meant the *actual exit* of the writ; and that, as the bond is not *required* to be given till *after* execution, the year and a day does not begin to run till this writ has been issued and bond given.

A case not cited at the bar—Wetter *v.* Rucker, 5 *E. C. L. R.* 160—tends to confirm this view.   It is there decided, that it is essential to the protection of the garnishee, that payment by him to the plaintiff should be *compulsory—the effect of an execution.* The sole ground of this decision, as distinctly asserted by each of the judges, is the *custom of London;* and in two of the opinions the evidence of the custom, in this particular, is traced up to a certificate of the Recorder of London, found in the Year Book of 22 *Edward IV.* (A. D. 1483).   The very argument urged before us, would seem to have been urged in Wetter *v.* Rucker, for PARK, J. makes this remark :—" I am quite clear, that upon the custom, in every point of view, it is necessary, not only *that judgment should be that execution shall issue*, but *that an actual award of execution should be made.*"

To insist, therefore, upon the necessity of the exit of the execution, as well as the giving of the bond to restore, before the year and a day *commences*, maintains harmony with the custom of London, not only on the very point under examination, but on the subordinate branch of the law of attachment—the character of the payment to be made by the garnishee.

It was objected, in the *second* place, that no security similar to

[Bujac v. Phillips.]

that which is required by the *custom of London,* as a pre-requisite
to the right of issuing a *scire facias ad disprobandum,* has been
entered by the administrator of the original defendant. The
nature of this security, under the custom, is not very distinctly
defined, but it would seem to be that of *special bail.* Whether
the language of the act of 1705 calls for the exaction of such
security, even where the defendant is alive and sues out the
*scire facias* himself, is a point not altogether plain. In Fitch
*v.* Ross, 4 *S. & R.* 564, Judge Duncan says he may come in
within a year and a day, &c. and contest the demand of the
plaintiff "*without* entering special bail." As the plaintiff *retains*
the fruits of the execution in the attachment until the defendant
*succeeds* on the *scire facias ad disprobandum,* there is but little
reason for requiring security of any description from the defen-
dant, who seeks in this manner to contest the validity of the
plaintiff's original proceeding. But, however this may be, where
the defendant in the attachment is alive, and has recourse to this
writ, we think the exemption from giving bail, &c. which gene-
rally obtains in regard to persons suing in *a representative capa-
city,* should, in this case, be extended to a party so circumstanced.
A different conclusion would, in most instances, be a denial of
the right so to interpose altogether.

The rule to quash the writ is therefore discharged.

PETTIT, *President,* was absent from indisposition.

Rule discharged.